## (June 26, 1980)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOMINICK MASCHI, Appellant.—Judgment, Supreme Court, New York County, rendered June 6, 1977, convicting defendant of burglary in the third degree and sentencing him to a term of two to four years imprisonment, reversed in the exercise of discretion in the interest of justice, and the action remanded for a new trial. Upon defendant's appeal from a judgment of the Supreme Court, New York County, rendered June 6, 1977, convicting him upon a jury verdict of burglary in the third degree and sentencing him as a predicate felon to a term of two to four years, we reversed the judgment and remanded the case for a new trial (65 AD2d 405). The grounds of our

reversal upon the law were that defendant had been denied a fair trial because (1) the People, in their cross-examination of defendant's witness Pappadakos, and in summation, implied that Pappadakos, who had testified in substance that defendant's entry into a store was not burglarious, had violated a duty to inform the People promptly of his exculpatory evidence and to testify with respect thereto before the Grand Jury, thus improperly impeaching Pappadakos; and (2) the People improperly cross-examined defendant concerning a condition of his probation and his arrest for allegedly resisting arrest. On appeal the Court of Appeals remanded for this court's discretionary review in the interest of justice defendant's claim that he was denied a fair trial in consequence of the improper impeachment of Pappadakos (49 NY2d 784). The Court of Appeals did not reach the other grounds which we ruled required a new trial. It held (p 786) that because defendant had failed to "register a timely or effective protest to the challenged cross-examination" he "therefore failed to preserve the error, if any, for appellate review." Accordingly, the court held (p 786) "the case must be remitted" to this court "to determine whether to exercise" our "discretionary power to review defendant's claim of reversible error in the absence of adequate protest and, if it so determines, then to rule thereon *(People v Cona, 49 NY2d 26, 33-34)."* We have concluded, upon re-examination of the record and in the exercise of our discretion, that the interest of justice requires a new trial. As we said in our prior opinion (p 407), the People "posited a duty of disclosure which had been breached" by Pappadakos. We have also concluded that the court's examination of defendant respecting the conditions of his probation and his alleged resistance to a prior arrest were improper, and interfered with defendant's right to a fair trial. In remanding we observe that the Court of Appeals has now clarified the law respecting cross-examination of alibi witnesses *(People v Dawson, 50 NY2d 311).* The court there stated that "a citizen ordinarily has no legal obligation to volunteer exculpatory information to law enforcement authorities * * * In the absence of any such legal duty, the decision whether to volunteer exculpatory information to the police regarding a particular suspect must remain a matter of individual conscience and private choice. Accordingly, it would be improper for a District Attorney to suggest through his questioning that a witness has a flawed moral character or is generally unworthy of belief solely because he or she failed to come forward prior to the trial." *(People v Dawson,* pp 317-318, *supra.)* As we demonstrated in our prior opinion, this is precisely what the prosecutor did in this case with respect to Pappadakos. *Dawson* went on to hold that such cross-examination is permissible when undertaken in "good faith" premised upon "the natural impulse of a person possessing exculpatory information" to "come forward at the earliest possible moment in order to forestall the mistaken prosecution of a friend or loved one." However, the court imposed conditions upon such cross-examination which were not adhered to on Maschi's trial. A proper foundation must be laid to provide a satisfactory basis for inquiry as to the failure to come forward. A Bench conference should first be held to ascertain the reasons for prior nondisclosure. In our case it may well be that had Pappadakos come forward at the scene of the arrest, he himself might have been arrested. *Dawson* also directs that appropriate instructions be given to the jury that there is no duty to disclose and that the failure to disclose may be considered by the jury only in ascertaining the witness' credibility and the likelihood that such disclosure would be of assistance to the defendant. This procedure was not followed in this case. *Dawson* also indicates that cross-examination respecting the failure of the witness to testify before the

Grand Jury is rarely, if ever, justified, because of the legal limitations as to who may testify before a Grand Jury and when and under whose auspices. Although there was no cross-examination of Pappadakos respecting his failure to testify before the Grand Jury, the prosecutor in summation commented upon such failure as demonstrating Pappadakos' lack of credibility. In short, defendant was denied a fair trial, even if he failed to preserve the errors for review as a matter of law by not interposing proper objections. The interest of justice requires remand for a new trial, and we so direct. Concur—Murphy, P. J., Fein and Sandler, JJ.

Markewich and Silverman, JJ., dissent in a memorandum by Silverman, J., as follows: We would affirm the judgment appealed from. It has now been determined that there is no question of law involved, the defendant having failed to object to the line of questioning. We do not think we should exercise our "interest of justice" jurisdiction (CPL 470.15, subd 3, par [c]; subd 6), where the proof of guilt is so strong, defendant having been found at 5:00 A.M. in a store where he did not belong, with the door broken and ajar, and with articles which had been in the display window now in a shopping bag. In addition, Justice Silverman adheres to the views expressed in his dissenting opinion on the original appeal in this case (65 AD2d 405, 412). This appears to be a case falling within the Court of Appeals language in *People v Dawson* (50 NY2d 311), "there exists a wide variety of situations in which the natural impulse of a person possessing exculpatory information would be to come forward at the earliest possible moment in order to forestall the mistaken prosecution of a friend or loved one. In such situations, the failure to speak up at a time when it would be natural to do so might well cast doubt upon the veracity of the witness' exculpatory statements at trial."